BRUCE M. SMITH, ISB #3425
MOORE SMITH BUXTON & TURCKE, CHARTERED
Attorneys at Law
225 North 9th Street, Suite 420
Boise, ID 83702
Telephone: (208) 331-1800
Facsimile: (208) 331-1202

PHILIP H. GORDON, ISB # 1996
GORDON LAW OFFICE
623 W. Hays Street
Boise, ID 83702-5512
Telephone: (208) 345-7100
Facsimile: (208) 345-0050

REX BLACKBURN, ISB #3170
BRUCE C. JONES, ISB #3177
DANIEL LORAS GLYNN, ISB #5113
BLACKBURN & JONES LLP
1673 W. Shoreline Dr., Ste. 200
Boise, ID 83702
Telephone: (208) 489-8989
Facsimile: (208) 489-8988

STEVE BERMAN
CRAIG SPIEGEL
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone:    (206) 623-7292
Facsimile:    (206) 623-0594

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GARY AND SHAWNA YASUDA, as a married couple,<br><br>Plaintiffs, | Civil No. 06-60-C-BLW<br><br>**PLAINTIFFS' AMENDED COMPLAINT AND DEMAND FOR** |

**PLAINTIFFS' AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL PURSUANT TO FED. R. CIV. P. 38(b) – 1**

| | |
|---|---|
| vs.<br><br>SEL-EQUITY COMPANY d/b/a SEL-EQUITY REAL ESTATE and SEL-EQUITY REALTY, and JOHN AND JANE DOES 1-50<br><br>　　　　Defendants. | **JURY TRIAL PURSUANT TO FED. R. CIV. P. 38(b)** |

COME NOW the Plaintiffs, and for their cause of action, allege as follows:

## I.
## INTRODUCTION

1.　　This Complaint, which sets forth claims for damages and injunctive relief, is brought pursuant to F.R.C.P. 23 by Gary and Shawna Yasuda, as individuals and as representatives of a class of injured Plaintiffs who bought or attempted to buy lots and/or homes in various subdivisions in the Treasure Valley Idaho area[1]. The Defendant, Sel-Equity Company dba as SelEquity Real Estate ("Sel-Equity") has, by its actions in marketing, offering, and providing real estate broker services for the sale of lots and homes in the various subdivisions, violated the antitrust and possibly other laws of the United States and the State of Idaho as set forth below. The Plaintiffs seek a declaratory judgment, ordering and adjudging that the Defendant violated the antitrust, unfair trade, and other laws of the United States and the State of Idaho and granting injunctive relief prohibiting Defendant from engaging in similar future conduct. The Plaintiffs also seek treble damages, including a refund of the commissions they were unlawfully charged, together with interest at the statutory rate, their attorney fees and costs, disgorgement of all profits unlawfully made, and other damages as established at trial.

---

[1] This case was originally part of a suit involving additional Plaintiffs and Defendants, *Bafus v. Aspen Realty Inc. et al.* Case No. 04-121-C-BLW. The Court in its order of February 10, 2006, ordered the original case to be severed into separate actions for each Plaintiff and Defendant.

**PLAINTIFFS' AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL PURSUANT TO FED. R. CIV. P. 38(b) – 2**

## II.

## JURISDICTION

2. Jurisdiction is conferred by means of 15 U.S.C. § 1, 2 et seq. (Sherman Antitrust Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337(a) (commerce and antitrust clause), 15 U.S.C. § 22 (injunctive relief), 15 U.S.C. § 15 (private antitrust treble damages), 28 U.S.C. § 2201 et seq. (Declaratory Judgment Act), and 28 U.S.C. § 1367 (supplemental jurisdiction).

## III.
## VENUE

3. Venue is proper because a substantial part of the events giving rise to the Plaintiffs' claims occurred here and the property itself is situated here.  28 U.S.C. § 1391.

## IV.
## PARTIES

4. Gary and Shawna Yasuda are residents of the State of Idaho.

5. Sel-Equity Company is an Idaho corporation formed in 2003.  It operates under the assumed business names of Sel-Equity Real Estate and Sel-Equity Realty.  It does business in Idaho and nationally as a real estate brokerage.  Upon information and belief, Kristen Van Engelen is the sole stockholder.

6. John and Jane Does 1-50 are unknown parties who, upon information and belief, participated in the activities identified in the Complaint.  These entities and/or persons will be identified through discovery.

## V.
## FACTUAL BACKGROUND

FACTS RELATED TO THE PLAINTIFFS GARY AND SHAWNA YASUDA

7. In August of 2003, Gary and Shawna Yasuda spoke with developer John Evans regarding the purchase of a lot in the Sedona Creek Subdivision, located in Eagle, Idaho. Dave Evans informed them that the Sedona Subdivision was being exclusively listed by Sel-Equity and that there were only seven builders that were authorized to construct homes in the Sedona Creek Subdivision

8. Upon information and belief, Sel-Equity is the exclusive listing agent for the sale of undeveloped lots in the Sedona Creek subdivision.

9. On September 15, 2003, the Yasudas selected Zach Evans Construction to build their home upon Lot 15, block number 1 within the Sedona Creek Subdivision. The lot was priced at eighty-four thousand, nine hundred dollars ($84,900).

10. Because the Yasudas' wished to construct a shop in addition to the home, they requested that they be provided with separate bids for each structure.

11. The bid sheets prepared by Zach Evans provided for a three percent "marketing fee" based upon the total cost of the lot, the home, and the shop.

12. Although these amounts were represented in Zach Evans Construction's bid sheets as a "marketing fee," upon closing in January 28, 2004, these amounts were described as a real estate broker's fee.

13. As a result of Sel-Equity's actions, the Yasudas were required to pay a three percent (3%) commission based on the total cost of the lot and the house as well as a three percent commission on the cost of the shop constructed. The commission on the lot should have been two thousand five hundred forty-seven dollars ($2,547), but the actual commission charged to the Yasudas was sixteen thousand one hundred seventy-nine dollars ($16,179). Thus, on closing on January 28, 2004, the Yasudas were required to pay approximately thirteen thousand six hundred

**PLAINTIFFS' AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL PURSUANT TO FED. R. CIV. P. 38(b) – 4**

thirty-two ($13,632) extra in commissions and purchase a house and shop at an inflated cost. The inflated cost of the house and shop also resulted in additional damages by increasing the costs of items such as taxes, loan origination fees, insurance, and other cost-based items.

14. With respect to this transaction and others, the Defendant, acting alone or in concert with others, as a general and routine practice, charges commissions based not on the cost of the undeveloped lot, but rather on the total cost of the undeveloped lot plus the cost of the house to-be constructed on the lot. The Defendant performs no services which are commensurate with the commissions charged, especially the commissions based on the cost of the homes to-be-constructed. The commissions on the cost of the homes to- be- constructed are charged solely by virtue of the fact that the Defendant controls the sale of the undeveloped lots and refuse to allow the sale of lots unless the homebuyer also pays a commission on the cost of the house to-be-constructed. Upon information and belief, there may be other real estate brokers who engage in similar practices.

15. In some instances, the Defendant, acting alone or in concert with others, charges the commissions under the guise of a "marketing fee." However, the commissions are always based on the cost of the developed lot, not the lot itself. Furthermore, the Defendant performed little or no services for the commissions on the construction of the house.

16. Upon information, the Defendant and others have and use monopolistic economic control in the manner described above in each of the subdivisions where they are the exclusive listing brokerage and/or controls the sale of undeveloped lots.

## VI.
## CLASS ACTION ALLEGATIONS

17. Plaintiffs bring this action as a class action pursuant to F.R.C.P. 23 and I.R.C.P. 23, individually and as members of the class.

18. The class shall include, at a minimum, all persons who bought undeveloped lots in the subdivisions reflecting the conditions described above, had homes built on the lots, and were charged a commission based on the cost of the lots plus the cost of the house, i.e. a commission based on the total build out cost. The class will also include others who bought undeveloped lots in other Treasure Valley, Idaho area subdivisions exclusively listed by the Defendant under the conditions as described herein, those who purchased homes in the subdivisions at costs that were inflated due to the practices of the Defendant, and possibly builders who were foreclosed from building in these and other subdivisions due to the actions of the Defendant.

19. The class is so numerous that joinder of all members as Plaintiffs in impracticable. The Plaintiffs allege upon information and belief that the class might consist of at least a thousand or more members.

20. The claims of the Plaintiffs are typical of the claims of the class, and the Plaintiffs will fairly and adequately protect the interests of the class. A class action is superior to other available methods for the fair and efficient adjudication of the controversy in that there are numerous Plaintiffs and the individual damages of any class member would be relatively small when measured against the potential costs of bringing the action, thus making the expense and burden of the litigation unjustified for individual actions.

21. There are common questions of law and fact, namely that the antitrust and other laws of the United State and the State of Idaho apply to the Defendant with regard to each member of the class and that the complained of conduct occurred with respect to each class member. The named Plaintiffs do not anticipate any difficulty in the management of this suit as a class action. Among the predominate questions of law and fact common to the Class are:

(a) Whether the Defendant and its co-conspirators engaged in a combination or

conspiracy to charge commissions on the price of the lot and house as a condition of purchasing the lot;

(b) The duration and extent of the combination or conspiracy alleged herein;

(c) Whether the Defendant and its co-conspirators were participants in the combination or conspiracy allege herein;

(d) Whether the alleged combination or conspiracy violated Section 1 of the Sherman Act and Idaho Code § 48-101;

(e) The effect of the combination or conspiracy upon the prices of homes sold in the Treasure Valley during the class period;

(f) Whether the conduct of the Defendant and its co-conspirators, as alleged in this Complaint, caused injury to the Plaintiffs and the other members of the Class; and

(g) The appropriate measure of damages sustained by Plaintiffs and other members of the Class.

22. The Plaintiffs will fairly and adequately protect the interest of the Class. They have no conflicts of interest in the maintenance of the class action, and they have retained counsel competent and experienced in class action litigation. Plaintiffs' counsel are regularly and continuously engaged in the prosecution of a large number of class action lawsuits in both state and federal courts, both in Idaho and in a significant number of other jurisdictions.

23. The Defendant has acted on grounds which are universally applicable to the class, thereby making injunctive and declaratory relief with respect to the class as a whole.

## VII.
## APPLICABLE LAW

24. The Sherman Antitrust Act is the nation's means of ensuring that competition is maintained, that trade and commerce are not restrained, and that the consumer gets the benefits of lower prices, better products, and more efficient production methods. Section 1 of the Act deals with the means by which competition is restrained, and Section 2 deals with the result of those actions. Coupled together, Sections 1 and 2 address almost every conceivable act prohibited by the Act.

Section 1 provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000 or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

This section prohibits contracts, combinations, and conspiracies which restrain trade.

Section 2 provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

This section prohibits monopolies and attempts to monopolize.

25. The Act applies to real estate brokerage businesses. *U.S. v. National Association of Real Estate Bds*. 339 US 485, 70 S. Ct. 711.

**PLAINTIFFS' AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL PURSUANT TO FED. R. CIV. P. 38(b) – 8**

26.	Idaho statutes closely mirror federal statutes with regard to the above described actions of Defendants. Specifically, Idaho Code § 48-101 et seq. is similar to the Sherman Antitrust Act, and makes illegal such monopolies, restraints of trade, unfair trade practices, and conspiracies.

27.	Under federal and state antitrust laws, tying arrangements reflect arrangements by which a party agrees to sell one product but only on the condition that the buyer also purchases a different and separate product. Tying arrangements often arise when a party has market power or monopoly power such that the party can force a buyer to buy the tied product even though the buyer wants to only buy the tying product. Tying agreements or arrangements are *per se* violations of the Sherman Antitrust Act just as are arrangements which fix prices. As applied to the foregoing facts, the tying product is the of undeveloped lot. The second product, which is separate and distinct from the first, is the Defendants' services, i.e. commissions, with regard to sale of developed lots. In other words, the Defendants would only allow the sale of undeveloped lots subject to the condition that the Defendants also had the exclusive right to sell and charge a commission on the developed lot. One of the results of the Defendants' tying arrangements in this case is to fix prices for housing in the subdivisions at a level that reflects the Defendants' commission on the tied product. In other words, to buy a lot in a subdivision, a buyer has to pay a commission based on services for the cost of the house as well as a commission based on services for the cost of the lot. This arrangement has the effect of fixing the price of housing for buyers at a level higher than would otherwise occur.

28.	Defendants performed either no or merely nominal services for the commission related to the cost of the house.

29.	Defendants' actions further damaged Plaintiffs in that other costs that were based on the price of the home, for example taxes and insurance, were similarly inflated.

30. Defendants' conduct also violates the Idaho Consumer Protection Act, I.C. § 48-601 *et seq.*, in that Defendants seek to maintain an exclusive listing for undeveloped lots in the subdivisions, to limit the number of builders who can build in the subdivisions, and to not allow the sale of lots without also requiring a commission on the houses to be built on the lots, which efforts constitute the advertising of goods or services with intent not to sell them as advertised as well as the engagement in an act or practice which is otherwise misleading, false, and/or deceptive to the consumer.

31. Defendants' actions, in addition to being regulated by both federal and state statutes, likewise are subject to the National Association of Realtors Code of Ethics. There are several key duties associated with the Code:

> The term REALTOR has come to connote competency, fairness, and integrity resulting from adherence to a lofty ideal of moral conduct in business relations. No inducement of profit and no instruction from clients ever can justify departure from this ideal. *Excerpt from Preamble*
>
> When serving a buyer, seller, landlord, tenant, or other party in a non-agency capacity, REALTORS remain obligated to treat all parties honestly. *Excerpt from Article 1 of the Code of Ethics and Standards of Practice of the National Association of Realtors dated January 1, 2005*
>
> REALTORS may represent the seller/landlord and buyer/tenant in the same transaction only after full disclosure to and with informed consent of both parties. *Excerpt from Standard of Practice 1-5 of the Code of Ethics and Standards of Practice of the National Association of Realtors dated January 1, 2005*
>
> REALTORS shall avoid exaggeration, misrepresentation, or concealment of pertinent facts relating to the property or the transaction. *Excerpt from Article 2 of the Code of Ethics and Standards of Practice of the National Association of Realtors dated January 1, 2005*
>
> In a transaction, REALTORS shall not accept compensation from

more than one party, even if permitted by law, without disclosure to all parties and the informed consent of the REALTOR's client or clients. *Excerpt from Article 7 of the Code of Ethics and Standards of Practice of the National Association of Realtors dated January 1, 2005*

### COUNT I:   VIOLATION OF THE SHERMAN ACT § 1
### (Contract, Conspiracy, Combination, and Agreement in Restraint of Trade that is *Per Se* Unlawful)

32. Plaintiffs reallege, and hereby incorporate by reference, all the foregoing allegations as if fully stated herein.

33. Defendant and its officers and/or agents, by means of their actions, entered into a contract, combination, or conspiracy specifically intended to allow them to maintain an exclusive listing for undeveloped lots in the subdivisions and thereby (1) limit the number of builders who could build, (2) not allow the sale of lots without a commission on the house to be built on the lot, and (3) tie services, i.e. commissions, on the construction and sale of the house to sale of a lot. If a buyer wants to buy a lot, they must pay a commission on the cost of the house and lot.

34. Said actions of the Defendant restrains trade by limiting competition from real estate brokers who, but for the actions of the Defendant, could charge a commission for the sale of an undeveloped lot independent of a commission on the sale of a house. This denies consumers the opportunity for lower prices and the ability to select, if desired, a broker who would not charge commissions on the to-be-built house. Said actions of the Defendant restrain trade by also limiting competition from builders who, but for the actions of the Defendant, could build houses in the subdivisions. The Defendant, by virtue of its actions, including the exclusive listing agreements, had sufficient economic power with regard to the sale of undeveloped lots to require the payment of commissions on the to-be-constructed houses.

35. Said actions of the Defendant were, and are, part of and affected the commerce of the United States. They have a substantial effect on interstate commerce.

36. Said actions of the Defendant are *per se* violations of the Sherman Antitrust Act based on the illegal tying of broker services, i.e. commission, for the cost of the house to the sale of the undeveloped lot.

37. The actions of the Defendant, along with the other unknown persons, also constitute an illegal price fixing scheme by which the prices of homes have been improperly increased by up to six percent (6%). Finally, the actions of the Defendant constitute an illegal agreement to limit competition and production by restricting the homebuilders who could build in the subdivision.

38. The actions of the Defendant constitute a *per se* violation of § 1 of the Sherman Antitrust Act.

## COUNT II: VIOLATION OF IDAHO CODE § 48-101 et seq.

39. Plaintiffs reallege, and hereby incorporate by reference, all the foregoing allegations as if fully stated herein.

40. The Defendant entered into a contract, combination, or conspiracy which was designed to maintain an exclusive listing for undeveloped lots in the subdivisions, to limit the number of builders who could build in the subdivisions, and to not allow the sale of lots without also requiring the payment of commissions on the houses to be built on the lots.

41. Said actions of the Defendant also further restrained trade by limiting competition from real estate brokers who, but for the action of the Defendant, could have sold undeveloped lots and charged a commission based on the price of the lot without a commission on the sale of a house, thus benefiting buyers with lower prices and the ability to select a broker who would not charge a commission on the house.

42. Said actions of the Defendant also deprived buyers of their right to use a builder of their choice.

43. Said actions of the Defendant were part of and affected the commerce of the United States and the State of Idaho. They had a substantial effect on interstate commerce.

44. Said actions of the Defendant are *per se* violations of Idaho Code based on the illegal tying of broker services, i.e. commission, for the cost of the house to the sale of the lot. The actions of the Defendant also constitute a price fixing scheme by which the prices of homes were increased by up to six percent (6%). Finally, the actions of the Defendant constitute an illegal agreement to limit competition and production by restricting the homebuilders who could build in the subdivision to only those who agreed to include a commission on the sale of the house. All of these actions unreasonably restrained trade.

45. By arranging and maintaining its exclusive listing authority and using such authority to limit builders and refusing to sell lots without charging a commission on the home to be built on the lot, the Defendant, acting alone and/or in concert with others, established and maintained a monopoly position with regard to brokerage services and the sale of lots and homes in the subdivisions.

46. As a result of the Defendant's monopolization of the market, Defendant was able to, and did, inflate the cost of housing by a margin of up to six percent (6%).

47. By virtue of its market power and actions, the Defendant was able to tie its services and a commission on the price of the houses to the sale of undeveloped lots.

48. By virtue of its market power and actions, the Defendant forced buyers in the subdivisions to excess commissions.

49. The effect of the Defendant's actions was to foreclose a substantial amount of interstate commerce and to unreasonably restrain trade, all in violation of Idaho law.

**COUNT III: Violation of the Idaho Consumer Protection Act, I.C. § 48-601 *et seq.***

50. Plaintiffs reallege, and hereby incorporate by reference, all the foregoing allegations as if fully stated herein.

51. Defendant entered into a contract, combination, or conspiracy which was designed to maintain an exclusive listing for undeveloped lots in its subdivisions, to limit the number of builders who could build in the subdivisions, and to not allow the sale of lots without also requiring a commission on the houses to be built on the lots.

52. The conduct of the Defendant constitutes unlawful activity under the Idaho Consumer Protection Act, I.C. § 48-601 *et seq.*, including, but not limited to, the advertising of goods or services with intent not to sell them as advertised and engaging in an act or practice which is otherwise misleading, false, and/or deceptive to the consumer.

53. As a direct and proximate result of the Defendant's misleading, false, and/or deceptive conduct, Plaintiffs have been damaged in an amount to be proven at trial but which damages should include costs and reasonable attorney's fees incidental thereto.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby respectfully demand a trial by jury on all issues raised by the pleadings pursuant to 38(b) of the Federal Rules of Civil Procedure.

**ATTORNEY FEES**

Plaintiffs have been required to retain the services of counsel to represent them herein. These Plaintiffs are entitled to recover reasonable costs and attorney fees from the Defendant pursuant to the foregoing authorities stated and as may otherwise be allowed by law.

**PRAYER**

WHEREFORE Plaintiffs pray for relief as follows:

1. That the Court order, adjudge, decree, and declare that the Defendant, and/or others acting in concert with Defendant, have violated § 1 of the Sherman Act by illegally tying their services, i.e. commission, as to the construction of a house to the sale of the lot.

2. That the Court order, adjudge, decree, and declare that the Defendant, and/or others acting in concert with Defendant, have violated § 1 of the Sherman Act by illegally denying buyers of their right to use potential builders of their choice by limiting the builders allowed to build in the subdivisions and limited the opportunity for other brokers to fairly compete.

3. That the Court order, adjudge, decree, and declare that the Defendant, and/or others acting in concert with the Defendant, have violated § 1 of the Sherman Act fixing prices in the subdivision at a level higher than they should have been.

4. That the Court order, adjudge, decree, and declare that the Defendant's actions represent a conflict of interest and violate the National Association of Realtors Code of Ethics.

5. That the Court order, adjudge, decree, and declare that the actions of the Defendants constitute unfair trade practices and illegally restrain trade pursuant to § 1 of the Sherman Act, and I.C. § 48-101 *et seq*.

6. That the Court order, adjudge, decree, and declare that the actions of the Defendants violated the Idaho Consumer Protection Act, I.C. § 48-601, *et seq*.

**PLAINTIFFS' AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL PURSUANT TO FED. R. CIV. P. 38(b) – 15**

7.     That the Court award Plaintiffs and members of the class their damages, trebled as provided by the foregoing law, including the disgorgement of illegal profits, and ,as appropriate, any and all assets acquired by virtue of the illegal profits and setting aside any transfer or conveyance of such illegal profits.

8.     That the Court award Plaintiffs and members of the class their costs and attorney fees.

9.     That the Court enjoin the Defendant from engaging in such illegal conduct in the future; and

10.    That the Court order such other relief as is just and equitable.

DATED this 28th day of February, 2006.

        BLACKBURN & JONES LLP
        BRUCE C. JONES
        DANIEL LORAS GLYNN

        PHILIP H. GORDON
        GORDON LAW OFFICE

        STEVE BERMAN
        CRAIG SPIEGEL
        HAGENS BERMAN SOBOL & SHAPIRO

        BRUCE M. SMITH
        MOORE SMITH BUXTON & TURCKE, CHTD

        _____/s/ Bruce M. Smith_____
            Bruce M. Smith
        Idaho State Bar No. 3425
        Attorneys for Plaintiffs
        MOORE SMITH BUXTON & TURCKE, CHTD.
        225 North Ninth Street, Suite 420
        Boise, ID 83702
        Telephone:   (208) 331-1800
        Facsimile:    (208) 331-1202
        Email:        bms@msbtlaw.com

## CERTIFICATE OF SERVICE

**I hereby certify that on February 28, 2006, I cause the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following counsel of record in this matter:**

Kenneth D. Nyman
Philip J. Collaer
Anderson Julian & Hull
P.O. Box 7426
Boise, ID 83707-7426
(208) 344-5800
Fax: (208) 344-5510
Email: knyman@ajhlaw.com
*Attorneys for Defendant Sel-Equity Company*

Thomas J. Angstman
Wyatt Benton Johnson
Angstman Law
3649 N. Lakeharbor Ln.
Boise, ID 83702
(208) 384-8588
Fax: (208) 342-6553
Email: mindy@angstman.com
*Attorney for Defendant Sel-Equity Company*

                                                          /s/ Bruce M. Smith_____
                                               Bruce M. Smith
                                               Idaho State Bar No. 3425
                                               Attorneys for Plaintiffs
                                               MOORE SMITH BUXTON & TURCKE, CHTD.
                                               225 North Ninth Street, Suite 420
                                               Boise, ID 83702
                                               Telephone:    (208) 331-1800
                                               Facsimile:    (208) 331-1202
                                               Email:         bms@msbtlaw.com